IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

     **Plaintiff,**

vs.                                      No. CR 16-847 MCA


**ADAM SADLOWSKI,**

     **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon Defendant Adam Sadlowski's *Motion to Suppress Evidence* (*Motion*) filed on August 18, 2016. [Doc. 38] The Court has considered the written submissions of the parties, the evidence developed at a hearing, and the applicable law, and is otherwise fully advised. The *Motion* is **DENIED**.

### I. Background

Defendant Adam Sadlowski (Defendant) is charged with being a felon in possession of firearms and ammunition contrary to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [Doc. 12]

On February 21, 2016, Bernalillo County Sheriff's Office (BCSO) detective Koppman obtained a search warrant for Defendant's house and car (Search Warrant #1). [Doc. 43, pg. 3; Doc. 38-1] The affidavit for Search Warrant #1 was based substantially

on the statements of a confidential informant and a confidential source (collectively, informants). [Doc. 38-1] The warrant was executed the next day (February 22). [Doc. 43, pg. 3] At some point during the search, the BCSO detectives notified Albuquerque Police Department (APD) of Defendant's presence in the house and APD officers subsequently arrived at the house. [Doc. 43, pg. 3] APD was investigating the death of S.S., who had been seen with Defendant shortly before her disappearance. [Doc. 43, pg. 3] At 15:03 hours, an APD officer interviewed Defendant. [Doc. 43, pg. 4 (stating that Defendant was handcuffed); Doc. 38-3, pg. 2-3] At 19:32 hours, based in part on Defendant's statements and an APD officer's observations while in the house, the APD obtained a search warrant (Search Warrant #2) for Defendant's house. [Doc. 38-2, pg. 1, 5] Multiple firearms and ammunition were recovered from Defendant's house. [Doc. 43, pg. 4; Doc. 38-1, pg. 7]

Defendant filed a *Motion to Suppress Evidence*. [Doc. 38] The Government filed a *Response*. [Doc. 43] With permission from the Court [Text-only order, [62]], Defendant filed a *Reply and Supplemental Brief*, to which he attached new exhibits. [Doc. 63] The Government notified the Court that it would not file a sur-reply. [Email, 11/14/16] The Court held a hearing on Defendant's *Motion* on November 29, 2016. At the hearing, the Court granted Defendant's request to submit additional briefing by both parties on the issue of the metropolitan court's jurisdiction to issue search warrants. [Tr. 11/29/2016, 107:17-109:23] The Court has considered each of these submissions in evaluating Defendant's *Motion*.

## II. Discussion

As a preliminary matter, the Court notes that several arguments raised in Defendant's pleadings were resolved at the November 29, 2016 hearing. For instance, in the *Motion*, Defendant seeks to suppress evidence gained from an interview with the APD officer. The Government maintained in its pleadings that this argument is moot because it does not intend to "present any of [D]efendant's statements made during Det. Manary's interview about the death of S.S." [Doc. 43, pg. 18] At the November 29, 2016 hearing on the *Motion*, the Government reiterated that it did not intend to introduce any statements related to APD's investigation. [Tr. 11/29/16, 100:22-101:5] Defendant agreed that the stipulation rendered his arguments moot. [Tr. 11/29/16, 101:15-18] Hence, the Court need not address Defendant's arguments as to suppression of those statements.

In addition, although Defendant argues that the officers failed to knock and announce their presence before entering his home, he acknowledges that such failure does not require suppression of evidence found in the house. [Doc 38, pg. 14] *Hudson v. Michigan*, 547 U.S. 586, 599 (2006). The Court, therefore, need not address this issue further.

Finally, although Defendant argued in his *Motion* that Search Warrant #1 was invalid because the supporting affidavit was unsigned, the Government stated in its *Response* that a signed copy of the affidavit was provided to the Defendant. [Doc. 43, pg. 9] It also provided a signed copy of the affidavit as an exhibit. [Doc. 43-1] Defendant

made no further mention of this factual dispute in subsequent pleadings, nor at the November 29, 2016 hearing. The Court considers this argument abandoned.

The two main remaining issues raised in the *Motion* are whether 1) Search Warrant #1 was properly issued by a metropolitan court judge, and 2) Search Warrant #1 was supported by probable cause.

### Metropolitan Court Judge Had Authority to Issue Search Warrant #1

Defendant maintains that Search Warrant #1 is invalid ab initio because 1) metropolitan court judges do not have jurisdiction to issue search warrants related to felonies, and 2) the warrant was not issued in compliance with Rule 41 of the Federal Rules of Criminal Procedure. The Court will address these arguments in turn.

Defendant argues that Search Warrant #1 is invalid because metropolitan court judges do not have the authority to issue a "felony warrant." [Doc. 63, pg. 16] *Cf. State v. Railey*, 1975-NMCA-019, ¶ 10, 87 N.M. 275, 532 P.2d 204 (stating that where no statute or constitution "authorizes the Zuni Tribal Court to issue a search warrant, the evidence seized pursuant to such a warrant is inadmissible at trial in a New Mexico court."). In support, he attached a portion of the municipal court manual, which states that "[m]unicipal judges have authority to issue search warrants to law enforcement officers to search premises located within the municipality, but only related to offenses within the court's jurisdiction." [Doc. 63-7] This statement relies on Municipal Court Rule 8-201(A) which states that "[a] warrant may be issued by the [municipal] court to search for and seize any . . . property which has been obtained or is possessed in a manner which *constitutes a violation of a municipal ordinance*." (Emphasis added.) In

supplemental briefing permitted by the Court, Defendant argues that the metropolitan courts cannot issue search warrants because there is no statutory grant of authority to do so. [Doc. 67, pg. 6]

The Court is not persuaded for the following reasons. First, Defendant's reliance on municipal court rules is unavailing because the signing judge here was a *metropolitan* court judge, not a municipal court judge. *Compare* NMSA 1978, § 35-14-1 (1993) (creating municipal courts) *with* NMSA 1978, § 34-8A-1 (2010) (creating metropolitan courts). Second, Defendant's argument equates jurisdiction to prosecute a crime with authority to issue a search warrant. These are not equivalent concepts. *See Bevington v. United States,* 35 F.2d 584, 584 (8th Cir. 1929) ("[T]he procuring of a search warrant ... is not, in any sense, the commencement of a prosecution. Such proceedings are merely inquisitorial in their nature, and may or may not result in a criminal prosecution, and are at best merely ancillary to a prosecution, if one takes place."); *United States v. McVicker*, No. 3:11-CR-00101-SI, 2012 WL 860412, at *2 (D. Or. Mar. 13, 2012) (rejecting an argument that "unless and until [the Government] can establish jurisdiction to prosecute [the defendant] for any crime he may have committed," the issuing court did not have authority to issue a search warrant, and stating "[o]n the contrary, the relevant question for the issuance of a warrant is the location of the evidence to be searched, not where the underlying crime may have occurred or which court may have jurisdiction over any resulting prosecution"); *State v. Heylmun*, 708 P.2d 778, 781 (Ariz. Ct. App. 1985) ("Since the issuance of a search warrant does not commence a prosecution, the prosecutorial jurisdiction of state courts is not applicable to the issues involved here.").

Third, although Defendant is correct that NMSA 1978, § 34-8A-3 does not specifically state that metropolitan court judges may issue search warrants, this fact is not dispositive because not all of the statutes creating lower courts specifically mention the power to issue search warrants. Indeed, even the constitutional provision governing district courts, which undisputedly have the authority to issue search warrants, does not specifically mention this authority. N.M. Const. art. VI, § 13; *see State v. Boyse*, 2013-NMSC-024, ¶¶ 18-19, 303 P.3d 830 (discussing the New Mexico rules of procedure governing issuance of search warrants). Moreover, authority to issue misdemeanor search warrants is also not found explicitly in Section 34-8A-3, yet Defendant appears to acknowledge that metropolitan courts have the power to issue such search warrants.

Fourth, the metropolitan courts have authority to issue search warrants related to felony offenses by operation of Supreme Court rule. Supreme Court rules have the force of law when they are "promulgated in accordance with the statutory mandate to carry out and effectuate the purpose of the applicable statute." *In re Christobal V.*, 2002-NMCA-077, ¶ 15, 132 N.M. 474, 50 P.3d 569; *see* NMSA 1978, § 38–1–1(A) (1966) ("The [S]upreme [C]ourt of New Mexico shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of New Mexico for the purpose of simplifying and promoting the speedy determination of litigation upon its merits. Such rules shall not abridge, enlarge or modify the substantive rights of any litigant."). Here, Rule 7-208(A)(1) NMRA provides that metropolitan courts may issue search warrants "to search for and seize any . . . property which has been obtained or is possessed in a manner which constitutes *a criminal offense*."

(Emphasis added.)  This language is identical to that found in the rule governing issuance of search warrants by district courts.  *See* Rule 5-211(A)(1) NMRA.  In contrast, the rule governing municipal courts explicitly limits those courts' authority to issue search warrants by limiting search warrants to "property which has been obtained or is possessed in a manner which constitutes *a violation of a municipal ordinance*." (emphasis added).  Rule 8-207(A)(1) NMRA.  There being no such limiting language in Rule 7-208, the Court concludes that the authority of the metropolitan court judges is not confined to search warrants related to misdemeanor crimes.

Defendant next argues that search warrant #1 is invalid because its issuance did not conform to the procedural requirements of Rule 41 of the Federal Rules of Criminal Procedure.  [Doc. 67, pg. 3-4] Specifically, he argues that the warrant is invalid because the metropolitan court is not a court of record, or because the metropolitan court judge did not administer an oath to Detective Koppman correctly as required by Rule 41 or Rule 4.1.  [*Id.*]

In relevant part, Rule 41(b)(1) provides that "a magistrate judge with authority in the district -- or if none is reasonably available, a judge of a state court of record in the district -- has authority to issue a warrant to search for and seize a person or property located within the district."  Rule 41(d)(3) provides that "[i]n accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means."  In turn, Rule 4.1 states that "[a] magistrate judge may consider information communicated by telephone or other reliable electronic means when reviewing a complaint or deciding whether to issue a warrant or summons" and that

"[i]f a magistrate judge decides to proceed under this rule, . . . [t]he judge must place under oath--and may examine--the applicant and any person on whose testimony the application is based."

The Government argues that Rule 41 does not apply here because the search at issue was not "federal in character." [Doc. 70, pg. 3] "If a search is a state search, with minimal or no federal involvement, the warrant need only to conform to federal constitutional requirements, and the fact that the warrant issued from a court not of record does not render the fruits of the search inadmissible in a subsequent federal criminal prosecution." *United States v. Millar*, 543 F.2d 1280, 1283 (10th Cir. 1976). However, "even though the search is made pursuant to a state warrant, if the search is nonetheless 'federal in character,' then the legality of the search would be conditioned upon a finding that the warrant satisfied federal constitutional requirements and certain provisions of Fed. R. Crim. P. 41." *Id.* at 1284 (internal quotation marks and citation omitted).

Contrary to the Government's argument that the search here was not subject to Rule 41 because Defendant "has not shown that any federal officers participated in either the search or the initial investigation," [Doc. 70, pg. 4] Detective Koppman testified that after he spoke to the confidential informant, he notified the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) because he "figured they'd be interested in it," and that ATF agents "came out, and they helped me with the surveillance, and we did surveillance at [Defendant's] residence." [Tr. 11/29/16, 10:1-6] He also testified that ATF agents were present during the search, [Tr. 11/29/16, 20:8-11] and that ATF agents may have taken custody of the weapons and ammunition seized. [Tr. 11/29/16, 23:22-25 (Q:

"When you found those firearms and the ammunition, what did you do with those objects?" A: "I -- I don't know if I tagged them into evidence or if ATF took them. ATF may have taken them."). The Court will assume for the purposes of this *Motion* that these facts render the search here sufficiently "federal in character" to implicate Rule 41. *See United States v. Pennington*, 635 F.2d 1387, 1389 (10th Cir. 1980) ("The federal government had a 'hand' in the matter, even though the affiant before the Magistrate was a state official, and therefore this was a federal search." *citing Lustig v. United States*, 338 U.S. 74, 78 (1949)).

Even so, the alleged failure to comply with Rule 41's requirements does not require suppression of evidence. When addressing whether violation of Rule 41 requires suppression, courts apply the "*Pennington* framework" as follows:

> [W]e begin by considering whether Rule 41 was in fact violated. If so, we typically proceed by determining whether that specific Rule 41 violation rises to the level of a Fourth Amendment violation. If we determine that the Rule 41 violation is *not* of constitutional import, we then consider whether the defendant can establish that, as a result of the Rule violation, (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule. Unless the defendant can establish prejudice or intentional disregard of the Rule, a non-constitutional violation of Rule 41 will not, by itself, justify suppression.

*United States v. Krueger*, 809 F.3d 1109, 1113–14 (10th Cir. 2015) (internal quotation marks and citations omitted); *see Pennington*, 635 F.2d at 1390.

Defendant identifies two ways in which Rule 41 was not followed. First, the issuing judge was not "a judge of a state court of record in the district" and thus was not authorized under Rule 41 to issue the search warrant. [Doc. 67, pg. 3-4] Two cases

inform the Court's conclusion that suppression is not warranted on this basis. In *Krueger*, the Tenth Circuit affirmed the suppression of evidence where the magistrate judge who issued the warrant did not have the authority to authorize a warrant to search property outside the district. 809 F.3d at 1117. Following the *Pennington* framework, the Court held that 1) Rule 41(b)(1) was violated when the judge issued a warrant for property outside the judge's district, *id*. at 1114, and that 2) the defendant was prejudiced by the issuance of the warrant because "the [out of district] search might not have occurred because the Government would not have obtained [the warrant] had Rule 41(b)(1) been followed." *Id*. at 1116. Important to the Court's conclusion was its observation that the federal officers requesting the warrant and the magistrate judge knew that the property to be searched was outside of the district. *Id*. at 1111; *id*. at 1117 ("Had the magistrate judge recognized that clear and obvious fact [that the judge lacked authority to issue the warrant], he surely would not have issued [the warrant]"). The Court concluded that, because of this knowledge, the good faith exception to the exclusionary rule did not apply and that "suppression further[ed] the purpose of the exclusionary rule by deterring law enforcement from seeking and obtaining warrants that clearly violate Rule 41(b)(1)." *Id*. at 1117.

The second case, *United States v. Comstock*, is more similar to the facts here. In *Comstock*, the defendant moved for suppression of evidence based on his assertion that a search warrant was defective because it was not issued by a judge in a court of record, but instead was issued by a Texas justice of the peace. 805 F.2d 1194, 1196 (5th Cir. 1986). The warrant was obtained by a San Antonio police officer. *Id*. at 1197. Testimony at the

suppression hearing established that local officers generally believed, erroneously, that Texas justices of the peace courts were courts of record. *Id*. "While he was preparing the warrant application, [the San Antonio officer] called [a federal agent] and arranged for the state and federal officers to meet in the vicinity of the . . . residence, but he did not tell [the federal agent] which court would issue the warrant." *Id*. at 1198. The San Antonio officer "claimed that, at the time the warrant was requested and until after it was executed, he intended to bring state charges against the defendants, but, after entering the . . . residence, he decided to turn the case over to the federal agents because he just felt they were better qualified and better equipped to handle a case of this magnitude." *Id*. Moreover, "[t]here [wa]s nothing to suggest that the justice of the peace issuing the warrant believed, or had any reason to believe, that participation of federal officers in the search was likely or contemplated." *Id*. at 1198.

Local officers and federal agents participated in the search, the defendant and the evidence obtained were placed in federal custody, and only federal charges were filed as a result of the search. *Id*. at 1199. Testimony at the suppression hearing was that the local officers assured the federal agent in charge that the warrant had been issued by a court of record, and that the federal agent did not know whether Texas justice of the peace courts were of record or not. *Id*.

The Fifth Circuit affirmed the lower court's rulings that 1) the search was "federal in character" due to the participation of federal agents in the search and thus compliance with Rule 41 was required, 2) the warrant failed to comply with Rule 41's requirements, and 3) nevertheless, the evidence should not be excluded because "all the officers

concerned acted with the affirmatively held good faith belief that, and not with indifference to whether, the warrant was issued by a court of record and was valid." *Id.* at 1200. Consistent with the *Pennington* framework, it held that "where there is no constitutional violation nor prejudice in the sense that the search would likely not have occurred or been as abrasive or intrusive had Rule 41 been followed, suppression in these circumstances is not appropriate if the officers concerned acted in the affirmative good faith belief that the warrant was valid" and that "[g]ood faith in this context implies not only that Rule 41 was not knowingly and intentionally violated, but also that the officers did not act in reckless disregard or conscious indifference to whether it applied and was complied with." *Id.* at 1207.

Here, like in *Comstock*, although the search later became "federal in character," the search warrant was initially sought by a BCSO detective and was signed by a metropolitan court judge consistent with state law. There is no evidence that Detective Koppman intentionally or recklessly disregarded Rule 41 or that Detective Koppman misled the metropolitan court judge as to the nature of the search, nor that the search would have proceeded differently had Rule 41 been followed. Indeed, Defendant makes no argument addressing prejudice resulting from Rule 41 violations. *See United States v. Pulliam*, 748 F.3d 967, 974 (10th Cir. 2014) (stating that the defendant "would not be entitled to suppression even if the Rule were violated" where he "ma[de] no attempt to show either prejudice or deliberate disregard of the Rule's requirements"). Moreover, unlike in *Krueger*, where the investigation was federal in character from the outset and involved only federal agents and a federal magistrate judge, here the investigation

*became* federal in character after issuance of the search warrant. Thus, unlike in *Krueger*, it was not obvious at the time the search warrant was issued that Rule 41 applied.

Defendant also argues that suppression is proper because the metropolitan court judge placed Detective Koppman under oath only after the judge had already signed the warrant. [Doc. 67, pg. 4] Defendant maintains that such a procedure violates Rules 41 and 4.1. [*Id.*] Under Rule 4.1, "[a] magistrate judge may consider information communicated by telephone or other reliable electronic means when reviewing a complaint or deciding whether to issue a warrant or summons." Further, "[i]f a magistrate judge decides to proceed under this rule, . . .[t]he judge *must place under oath*--and may examine--the applicant and any person on whose testimony the application is based." Fed. R. Crim. P. 4.1 (emphasis added).

The Court has examined Detective Koppman's testimony and concludes that it is unclear whether the metropolitan court judge in fact approved the warrant before placing Detective Koppman under oath. [*Compare* Tr. 11/29/16, 79:11-14 *with* 77:16-78:7 *and* 76:10-13] In any case, Defendant has not shown prejudice due to the timing of the oath nor any intentional disregard of Rules 41 and 4.1. *See United States v. Vasser*, 648 F.2d 507, 511 (9th Cir. 1980) (stating that "the timing of the oath did not require suppression in this case" where "the timing of the oath could not have caused any prejudice to [the defendant].").

In sum, the Court concludes that the metropolitan court judge here was empowered to issue Search Warrant #1 by virtue of Supreme Court Rule 7-208. In

addition, even if Rules 41 and 4.1 of the Federal Rules of Criminal Procedure apply, any violation of those rules does not require suppression of evidence here because Defendant has not shown that the violations are constitutional in nature, prejudicial to him, or the result of intentional disregard of the Rules.

### Search Warrant #1 is Supported by Probable Cause

Defendant next argues that the Search Warrant #1 [Doc. 38-1] lacked a probable cause basis because it 1) is based on fabricated/boilerplate language by the affiant, or (2) does not particularly identify Defendant's house as the house to be searched. For ease of reference and to distinguish between the affidavit here and other affidavits, the Court will hereafter refer to the affidavit supporting Search Warrant #1 with a capital ("Affidavit").

Much of Defendant's *Supplemental Reply Brief in Support of Motion to Suppress Evidence* is devoted to discussion of whether he is entitled to a "*Franks* hearing," at which the Court should determine whether Detective Koppman falsified or was reckless in preparing the Affidavit for Search Warrant #1. [Doc. 63] *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Defendant alleges that Detective Koppman, the affiant, merely cut and pasted "boilerplate" language in sections of the Affidavit requiring particularized details. [Doc. 63, pg. 3] As evidence, Defendant points to six other search warrant affidavits by Detective Koppman, and to the fact that the language in the Affidavit here is the same as in those affidavits. [Doc. 63, pg. 4, ref. Docs. 63-1 through 63-6] He argues that Detective Koppman must have fabricated some details in his Affidavit here because the facts could not possibly have been the same in all seven cases. [Doc. 63, pg. 7]

"Under *Franks,* a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy,* 131 F.3d 1371, 1376 (10th Cir. 1997) (citing *Franks*, 438 U.S. at 155–56). "[T]he standards of 'deliberate falsehood' and 'reckless disregard' set forth in *Franks* apply 'to material omissions, as well as affirmative falsehoods.'" *Kennedy,* 131 F.3d at 1376. The district court must suppress evidence if it finds, by a preponderance of the evidence after a hearing, that the affidavit contains false statements or material omissions that were essential to the authorizing judge's probable cause determination. *Id.*

During the hearing on the *Motion*, Defendant questioned Detective Koppman at some length on whether and to what extent he "cut and pasted" portions of his Affidavit from other affidavits, and his reasons for doing so. [Tr. 11/29/16, 48:25-55:8; 57:13-60:11] Defendant also admitted into evidence the six affidavits authored by Detective Koppman that contained the same or very similar language to that in the Affidavit here. [Tr. 11/29/16, 64:22, 66:9, 67:11, 68:3] In addition, in light of this Court's ruling that Detective Koppman would not be obliged to reveal the identity or identifying characteristics of informants [Doc. 60], the Court examined Detective Koppman in sealed proceedings as to the basis for Detective Koppman's trust in the informants, the informants' track history, and whether the informants cited in the Affidavit were the same informants cited in the other affidavits. [Tr. 104:1-7; 106:20-107:1, 73:16-74:20] Both parties agreed to this procedure and were permitted to submit written questions to the

Court before the examination. [*Id.*] Defendant was thus afforded the opportunity to challenge the veracity of the Affidavit, as well as the basis for probable cause, in an evidentiary hearing. *Cf. United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015) (holding that it is within the district court's discretion to hold an evidentiary *Franks* hearing even if the defendant has not made an adequate showing); *United States v. Colquitt*, 604 Fed. App'x 424, 429 (6th Cir. 2015) (affirming the district court's taking of evidence to determine whether the affiant acted knowingly and intentionally in disregard of the truth).

Based on evidence from the hearing, the Court first must determine whether the Affidavit contains false statements or material omissions. If so, those statements must be excised from the Affidavit. Next, the Court must determine whether the Affidavit establishes probable cause even without the excised portions. *Kennedy,* 131 F.3d at 1376.

Defendant maintains that, by cutting and pasting the same text in multiple affidavits, Detective Koppman "reckless[ly] disregard[ed]" the truth as it pertains to each particular affidavit. In the Tenth Circuit, "[t]o establish reckless disregard in the presentation of information to a magistrate judge, 'there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations ... and [a] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) quoting *Beard v. City of Northglenn,* 24 F.3d 110, 116 (10th Cir. 1994). The defendant bears the burden to demonstrate reckless disregard by a preponderance of the

evidence. *Kennedy*, 131 F.3d at 1376. Here, there is no such evidence. Detective Koppman testified repeatedly that he would not have used "standard language" if it had not been true as to this CI or this defendant. [Tr. 11/29/16, 32:1-4, 51:14-25, 52:12-53:22, 54:21-55:8] The Court credits this testimony and finds that Defendant has not demonstrated that Detective Koppman "entertained serious doubts as to the truth" in preparing the Affidavit.

To the extent Defendant argues that "cutting and pasting" or using boilerplate language automatically renders the Affidavit false, the Court disagrees. Detective Koppman testified that he often investigates similar crimes and conducts investigations using similar techniques. [Tr. 11/29/16, 63:14-17, 68:13-25] The Court would anticipate some repetition of the description of these techniques in affidavits for search warrants. *Cf. United States v. Davenport*, No. 98-20020-JWL, 1998 WL 513011, at *2 (D. Kan. July 31, 1998) (stating that the use of boilerplate "language is [not] fatal to the wiretap application" and that "[a] certain amount of language common to various warrant applications is to be expected, in light of the inevitable similarities found in most drug conspiracies."). Other courts have noted that reliance on "fill in the blanks," "pre-printed," or boilerplate language in search warrant affidavits may be problematic, as it "engenders the risk that insufficient 'particularized facts' about the case or the suspect will be presented for a magistrate to determine probable cause." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996); *United States v. Garcia*, 528 F.3d 481, 486 (7th Cir. 2008) ("We understand why officers may wish to employ a shortcut when applying for warrants. But we caution that this practice may ultimately result in evidence suppression

at trial."). However, the use of such language does not render an affidavit inadequate where the statements are true as to the search in question and the affidavit is otherwise sufficiently particularized. *See United States v. Norris*, 640 F.3d 295, 301–02 (7th Cir. 2011) (stating that, where the officer "admitted that he used the 'cut and paste' function on his computer to write certain paragraphs of the affidavit" but also "testified that "[he] made sure that the events that [he] changed were correct and accurate," "these actions . . . [do not] call[] into question the veracity of his representations to the state court."); *Garcia*, 528 F.3d at 486 (holding that there was a substantial basis for issuance of a search warrant in spite of use of boilerplate language); *United States v. Romo,* 914 F.2d 889, 898 (7th Cir. 1990) ("As long as there is sufficient information to provide probable cause for the search, the fact that the affidavit is partially pre-printed is irrelevant."); *United States v. Ammons*, No. 2:15-CR-146-FTM-UACM, 2016 WL 3856165, at *4 (M.D. Fla. July 15, 2016) ( "Regarding the cutting and pasting of verbiage into this search warrant affidavit, the Court does not find fault with this procedure IF, and ONLY IF, the observations of the affiant match the verbiage that was cut and pasted into the affidavit. Most importantly, the information contained within the search warrant affidavit must be true and correct no matter its origin."); *United States v. Green*, No. 4:12CR370, 2012 WL 5378737, at *9 (N.D. Ohio Oct. 31, 2012), *aff'd,* 572 F. App'x 438 (6th Cir. 2014) ("Preprinted boilerplate language can support probable cause if, as here, there is sufficiently particularized factual information for a finding of probable cause."); *United States v. Harden*, No. CRIM. 06-79-KI, 2007 WL 3312342, at *5 (D. Or. Nov. 6, 2007)

(finding no fault with "the officer for using the cut and paste tools on his word processor").

The Court concludes that the challenged portions of the Affidavit do not require excising because there is no evidence that Detective Koppman recklessly disregarded the truth in preparing the Affidavit. The Court therefore will consider the Affidavit as a whole to determine whether it provides a substantial basis for probable cause to search Defendant's residence.

## *Considering the Affidavit as a whole, it Provides a Substantial Basis for Probable Cause*

When assessing the validity of a search warrant, a reviewing court gives "great deference to the probable cause assessment of the state court judge who issued the warrant." *Pulliam*, 748 F.3d at 971. This Court's "review is limited to ensuring the Government's affidavit provided a substantial basis for the issuance of the warrant." *Id.* (internal quotation marks and alteration omitted). Where a case is marginal or doubtful, reviewing courts defer to the issuing judge's probable cause determination. *Id.*; *United States v. Biglow*, 562 F.3d 1272, 1282 (10th Cir. 2009). To review probable cause, this Court "look[s] to the totality of the circumstances as detailed in the affidavit accompanying the application for the search warrant." *Pulliam,* 748 F.3d at 971 (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Probable cause is established "if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Barajas*, 710 F.3d 1102, 1108 (10th Cir. 2013); *Biglow*, 562 F.3d at 1281. "[P]robable cause is a flexible

common-sense standard" and "'hypertechnical' constructions of the Government's evidence to invalidate a warrant is expressly disallowed." *Biglow*, 562 F.3d at 1282. However, a court cannot "pile hunch upon hunch" in order to find probable cause. *Barajas*, 710 F.3d at 1108. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* (citation omitted).

"Where, as here, probable cause is based on an informant's tip, the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge." *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011). Veracity refers to "whether there is reason to believe that the informant is telling the truth, including whether he faces criminal charges or whether his statement is against his own penal interest." *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (citation omitted). Reliability refers to "whether the informant has provided accurate information in the past." *Id*. Finally, basis of knowledge refers to how the informant came to know about the defendant's activity. *Id*. When an informant includes "highly specific or personal details" about the defendant, "one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." *Id*. "[A] deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability." *Id*.

The Court finds that the metropolitan court judge had a substantial basis for concluding that probable cause existed for the issuance of the Search Warrant #1. The Affidavit is based largely on the statements of a known confidential informant and a

known confidential source. [Doc. 38-1] The Affidavit describes what the confidential informant told Detective Koppman about activities at Defendant's house, including specific details about Defendant's vehicles, Defendant's previous convictions and statements, and Defendant's firearms. [Doc. 43-1, pg. 4] The confidential informant's description of activity at Defendant's house is detailed and indicates personal knowledge. *Quezada-Enriquez*, 567 F.3d at 1233. Moreover, Detective Koppman corroborated the confidential informant's statements by 1) searching a database to confirm the confidential informant's statement that Defendant had been arrested for murder and that the charges had been dismissed, 2) observing a black Bentley on Defendant's property as stated by the informant, and 3) observing people known to be methamphetamine users entering Defendant's house. *See Hendrix*, 664 F.3d at 1338 ("[A]n informant's tip is more reliable if it is confirmed by officers' independent observations."). In addition, the confidential informant indicated that "it" had purchased methamphetamine from Defendant in the past. *See id.* at 1339 (including the "self-inculpatory" statement of the informant as one of the factors supporting the reliability of the informant). The Affidavit states that Detective Koppman confirmed this information with the confidential informant within twenty-four hours of submitting the Affidavit. [Doc. 38-1, pg. 5] Finally, the Affidavit describes contact with a confidential source who informed Detective Koppman that Defendant had been selling "heroin and methamphetamine" and "constantly has a firearm with him and on him." [Doc. 38-1, pg. 5] *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) ("A tip from a second informant can also help corroborate information from a confidential informant.").

The Affidavit includes a statement that the confidential informant had provided corroborated information to detectives in the past and knew that supplying false information could lead to criminal charges. [Doc. 38-1, pg. 4] A similar paragraph describes the confidential source's history with the BCSO. [Doc. 38-1, pg. 5] Although these paragraphs are general and do not provide specifics about the informants' criminal history or history with the BCSO, the lack of such detail is not fatal where there is other evidence of reliability. *United States v. Avery*, 295 F.3d 1158, 1167–68 (10th Cir. 2002) ("[T]he complete failure of an affidavit to discuss the reliability of an informant does not automatically preclude a finding of probable cause, nor is the affidavit's failure to discuss the informant's criminal history when outlining why the informant is reliable automatically fatal." (citations omitted)); *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").

The Affidavit also states that Detective Koppman surveilled Defendant's residence and observed visitors consistent with drug trafficking. [Doc. 38-1, pg. 4] *Artez*, 389 F.3d at 1114 ("Police surveillance which show[s] an unusually high volume of visitors briefly entering and leaving [a] residence, consistent with drug trafficking[,] can also corroborate information from a confidential informant that the residence is being used to distribute narcotics." (internal quotation marks and citation omitted)). Defendant asserts that Detective Koppman must have fabricated at least some of the details about his surveillance of Defendant's house because the paragraph describing his surveillance is

identical or nearly so to descriptions in other affidavits. [Doc. 63, pg. 9-12] In several of the affidavits, Detective Koppman describes his surveillance the same way:

> [Statement of the date], affiant conducted surveillance on [address]. Within a two (2) hour block affiant observed multiple subjects enter the [address] residence. During this time affiant observed the traffic to stay for a very short amount of time, usually 3 to 5 minutes. Affiant knows through his training and experience that this conduct is highly consistent with drug trafficking of the residence. The brief staying visitors did not bring children or packages of any kind, there was not socializing observed, and they left the [address] residence without any packages, children or other persons.

[Doc. 63, pg. 10-11] However, the Affidavit here includes six additional sentences, in which Detective Koppman stated that, while surveilling the house, he "obtain[ed] the license plate of one of the vehicles [that pulled up to the house]" and determined that the registered owners had "prior methamphetamine related arrests," and also observed another person enter the residence who was known to Detective Koppman to have prior methamphetamine arrests. [Doc. 43-1, pg. 5] Even if some of the description of the surveillance techniques is boilerplate language, these details are specific to this investigation and lend particularity to the Affidavit.

Finally, the section addressing the anticipated fruits of a search is sufficiently particular, even though it is substantially the same as that found in the other affidavits. Defendant maintains that "[i]t is not probable that in every single case cited, that the informant really told [Officer] Koppman[] that the defendant in each separate case dealt in 'methamphetamine[,] cocaine[,] and heroin,' and that there was likely 'packaging' and 'cooking' materials that would be inside the subject house for each of these separate cases." [Doc. 63, pg. 9]

While "a search warrant must be sufficiently particular in describing the things to be seized to prevent a general, exploratory rummaging in a person's belongings," "[a] warrant that describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d 770, 774-75 (10th Cir. 1990). Several courts have held that, where the warrant relates to potential evidence of drug trafficking, a broad statement of items to be seized is appropriate under the circumstances. *See, e.g.*, *United States v. Emmons*, 24 F.3d 1210, 1216 (10th Cir. 1994) ("The type of criminal activity under investigation in the present case-a drug dealing business-makes it difficult to list with any greater particularity the books and records desired to be seized which evidences such activity." (internal quotation marks and citation omitted)); *United States v. Wicks,* 995 F.2d 964, 973 (10th Cir. 1993) (holding a warrant valid where it contained "boilerplate" language addressing the items to be seized and "the agents testified [that the items listed were things] they would expect ordinarily to find in the residence or dwelling of a drug trafficker, but which they admittedly had no *specific* reason to believe were in [the defendant's] motel rooms.").

As to Defendant's argument that the Affidavit is faulty because it lists "[m]ethamphetamine, [c]ocaine[, and h]eroin" while the confidential informant named only methamphetamine, the Court is not persuaded. First, a "confidential source" also cited in the Affidavit told Detective Koppman that Defendant was selling both methamphetamine and heroin. [Doc. 43-1, pg. 5] Second, it would be overly technical to invalidate a warrant on this ground where the items described are within the same class of

illegal activity. *See United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006) ("A reviewing court is to interpret search warrant affidavits in a common sense and realistic fashion."). For instance, in *United States v. Sullivan*, the Tenth Circuit affirmed the denial of a suppression motion where the affidavit named as items to be seized "[c]ertain dangerous substances, the same being narcotics, marijuana, hallucinogens, barbiturates, amphetamines and meth-amphetamines, listed in the schedules of the Uniform Controlled Dangerous Substance Act of the State of Oklahoma" and stated that this description was sufficient "[i]n light of the on-going drug activities described in the affidavits." 919 F.2d 1403, 1424 & n.31 (10th Cir. 1990).

### *Affidavit Sufficiently Describes House to be Searched*

Finally, Defendant also argues that Search Warrant #1 is "clearly a search warrant for the Bentl[e]y and not the residence." [Doc. 38, pg. 4] He draws this argument from the fact that the paragraph describing the residence to be searched does not specifically state the address of the house. [*Id.*] Defendant's narrow focus only on that paragraph is too restrictive. Considering the Affidavit as a whole, it is clear that the residence is included within the Affidavit and warrant. The heading of the Affidavit (which appears on each page) includes Defendant's address, and the Affidavit includes a description of the house. [Doc. 43-1, pg. 2] The address also appears four times in the Affidavit, and there are multiple references to Defendant's residence. [Doc. 43-1, pg. 2, 4, 5] *See Sullivan*, 919 F.2d at 1423 (stating that a "warrant should be read in a practical sense and as a whole.").

Considering the Affidavit in its entirety and in a common sense manner, the Court concludes that it provided a substantial basis for the issuing magistrate to find that it "establishe[d] the fair probability that contraband or evidence of a crime will be found in [Defendant's residence and vehicle]." *Barajas*, 710 F.3d at 1108.

## III. Conclusion

For the reasons stated herein, Defendant's *Motion to Suppress Evidence* [Doc. 38] is **DENIED**.

**SO ORDERED this 8th day of November, 2017.**

_____
**M. Christina Armijo**
**Chief United States District Judge**